IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

NANCY ELSAS, Individually, as
personal representative of the
Estate of Louis Jacob Elsas II,
and as Trustee of the Residuary
Trust of the Louis Jacob Elsas II
Management Trust U/A, Sept. 28, 2011                    PLAINTIFF

VS.                           CIVIL ACTION NO. 5:15-cv-28(DCB)(MTP)

YAKKASSIPPI, LLC                                        DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the plaintiff's Motion for Summary Judgment **(docket entry 65)**, and on the defendant's Motion in Limine **(docket entry 76)**. Having carefully considered the parties' briefs and the applicable law, as well as testimony and oral arguments presented by the parties at a hearing on May 12, 2016, the Court finds as follows:

The plaintiff's Complaint alleges that on or about August of 2014, Yakkassippi, LLC ("Yakkassippi") purchased several of the Elsas family members' mineral interest shares for $1,500,000.00; and, during the same period, offered to purchase the entire share of the Elsas family minerals owned by the Estate of Dr. Louis Jacob Elsas, II, deceased ("the Estate"). The plaintiff, Nancy Elsas, serves as Personal Representative of the Estate and as Trustee of the Louis Jacob Elsas, II, Residuary Trust. Yakkassippi prepared and sent, to Nancy Elsas and her counsel Haley Schwartz, a Purchase and Sale Agreement ("PSA") for review and signature, and agreed to

pay $500,000.00 to purchase the Estate's entire mineral interests in Wilkinson County, Mississippi. Yakkassippi agreed to hold harmless and indemnify the seller and its agents from "all claims, losses, costs, liabilities, and expenses arising out of or resulting from any misrepresentation or breach of any warranty, covenant, or agreement of Buyer contained in this Agreement." PSA, ¶ 10.

On or about August 20, 2014, the plaintiff accepted the PSA, co-signed it on behalf of the Estate, and returned the executed document to Yakkassippi. The document obligated the parties to close the sale within 90 days of the date of the PSA. PSA, ¶ 3. The PSA also stated that the effective date of the mineral deed would be no later than November 15, 2014. *Id*.

On November 14, 2014, the plaintiff communicated to Yakkassippi, through her counsel, that she was prepared to tender a signed mineral deed as required by the PSA. E-mail of 11-14-14 (Exhibit 3 of plaintiff's Complaint). The plaintiff contends that the defendant "willfully breached the PSA, repudiating the executed agreement and refusing to close the sale as obligated by the PSA," and "advised that they had no intention of closing the agreed-upon sale unless and until [the plaintiff] - as well as other Elsas family members who were not parties to the PSA - sign a release and indemnity agreement as a condition precedent to closing the purchase and sale." Complaint, ¶ 20. The plaintiff states that

2

such release and indemnity agreement was neither a term nor a condition of the PSA, "nor was any such agreement included in any negotiations for the sale and purchase of the subject minerals before the PSA was signed." Id. Furthermore, the PSA provides:

> (c) <u>Entire Agreement.</u> This Agreement, together with the exhibits attached hereto and the Mineral Deed and other documents to be delivered pursuant to the terms hereof, shall constitute the complete agreement between the Parties and shall supersede all prior agreements, whether written or oral, and any representations or conversations with respect to the Interests. This Agreement represents the final understanding and agreement between the Parties on the matters addressed herein and may not be contradicted by evidence or prior, contemporaneous, or subsequent oral arguments of the Parties.

PSA, ¶ 11(c).

The plaintiff seeks a ruling that the parties entered into an unambiguous, jointly-signed contractual agreement (the PSA), entitling the plaintiff to the remedy of specific performance or, in the alternative, damages for willful breach of the contract by the defendant. She also seeks an award of attorney's fees and costs. Complaint, ¶¶ 23, 27.

The defendant does not dispute that a contract was formed. However, Yakkassippi contends that the plaintiff is not entitled to summary judgment, nor to the remedy of specific performance, because genuine issues of material fact exist based on Yakkassippi's affirmative defenses, including equitable estoppel, along with conduct by the plaintiff or her agents evidencing a material breach of contract, anticipatory breach of contract,

repudiation of the contract, contract modification, unclean hands and/or duress and coercion.

Specifically, Yakkassippi agrees that the first two elements of contract formation (offer and acceptance) were achieved, leading to the drafting of the PSA and its execution by the parties. However, the defendant alleges that the plaintiff attempted to renegotiate the purchase price in the PSA, and threatened litigation if the previously bargained-for consideration were not increased)(constituting anticipatory breach and/or repudiation of the contract and relieving the defendant of any further obligation under the contract).

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986); <u>Ragas v. Tennessee Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  <u>Matasushita Elec. Indus.</u>

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Ragas, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Anderson, 477 U.S. at 254-55.

   The PSA provides that its provisions "shall be governed by and construed in accordance with the laws of the State of Texas."  PSA, ¶ 11(a).  Under Texas law, "anticipatory repudiation applies only when a party repudiates the contract before time for performance."  Admiral Motor Hotel v. Community Inns, 389 S.W.2d 694, 700 (Tex.Civ.App. 1965).  The refusal to perform must be unconditional and the renunciation of the contract must be complete.  Id.  The repudiating party must clearly show a fixed intention not to comply with the terms of the contract in the future.  Ennis Business Forms, Inc. V. Gehrig, 534 S.W.2d 183, 189 (Tex.Civ.App. 1976).

> In order for there to be such a repudiation of a contract the declaration of an intention not to perform the contract in the future must be positive and unconditional in its terms.  Such an anticipatory breach or repudiation has been committed when one party to the contract demands of the other a performance to which he has no right under the contract and states definitely that unless his demand is complied with he will not render his promised performance.

Humphrey v. Placid Oil Co., 142 F.Supp. 246 (E.D. Tex. 1956)(footnotes and citations omitted).  Repudiation is shown by words or conduct that show "'a fixed intention to abandon, renounce and refuse to perform the contract.'"  Panasonic Co. v. Zinn, 903

5

F.2d 1039, 1042 (5th Cir. 1990)(quoting <u>Hauglum v. Durst</u>, 769 S.W.2d 646, 651 (Tex.App. 1989)).  "To be a repudiation, a refusal to perform the contract under <u>any</u> interpretation must be firmly expressed."  <u>P&L Contractors, Inc. v. American Norit Co., Inc.</u>, 5 F.3d 133, 139 (5th Cir. 1993)(emphasis added).

The plaintiff moves for summary judgment based on the defendant's failure to perform under the terms of the PSA, and seeks specific performance or, in the alternative, damages for willful breach of the contract by the defendant.  The defendant's defense is based on communications between the defendant and Lucien "Sonny" C. Gwin, Jr., which the defendant alleges manifested an intent to repudiate the PSA on behalf of the plaintiff.  However, the defendant has come forward with no evidence that Attorney Gwin represented the plaintiff, nor any evidence that he represented to the defendant that he had authority to speak for the plaintiff or had any other relationship or involvement with the contract at issue in this case.  Instead, Mr. Gwin represented other parties not involved in the contract which is the subject of this suit.  At no time did the plaintiff, nor any representative of the plaintiff, manifest an intent to repudiate the PSA.  The Court therefore finds that there was no anticipatory breach nor repudiation of the PSA by the plaintiff.  To the contrary, the defendant breached the contract when it failed to close the sale as it was obligated to do under the terms of the PSA.  The plaintiff is therefore entitled to

summary judgment.

The plaintiff seeks specific performance of the contract or, in the alternative, damages for breach of contract. Complaint, ¶ 23. Texas law holds that "[s]pecific performance is an equitable remedy that may be awarded upon a showing of breach of contract." Stafford v. Southern Vanity Magazine, Inc., 231 S.W.3d 530, 535 (Tex.App. 2007). However, in addition to the elements for breach of contract, the party seeking specific performance must also establish that there is no adequate remedy at law to compensate it for its loss. South Plains Switching, Ltd. v. BNSF Ry. Co., 255 S.W.3d 690, 703 (Tex.App. 2008). In other words, the plaintiff must establish that it "cannot be fully compensated through the legal remedy of damages or [that] damages may not be accurately ascertained." General Universal Sys., Inc. v. Lee, 379 F.3d 131, 153 (5th Cir. 2004); see also Stafford, 231 S.W.3d at 535 ("Specific performance is ... an equitable remedy used as a substitute for monetary damages when such damages would not be adequate."); American Apparel Prods., Inc. v. Brabs, Inc., 880 S.W.2d 267, 269 (Tex.App. 1994)(because specific performance is an equitable remedy and "not one of absolute right," the decision of whether to grant the remedy "rests in the sound decision of the trial court.").

In this case, the plaintiff does not allege that she cannot be compensated by monetary damages for her loss. In fact, the contract clearly provides that the defendant's obligation under the

7

PSA is to pay $500,000 to the plaintiff upon tender of the mineral deed.  Thus, damages can be accurately ascertained and will fully compensate the plaintiff for her loss under the terms of the contract.

The plaintiff also seeks attorney fees, arguing that Yakkassippi's failure to pay required the plaintiff to incur such fees in order to force performance of the contract, and demanding payment of her counsel's fees pursuant to a contingency fee (percentage) contract in the amount of $175,000.  In response, the defendant asserts that the plaintiff has failed to make a separate motion for attorney fees pursuant to Rule 54(d)(2)(A) of the Mississippi Rules of Civil Procedure.  The defendant also argues that the plaintiff is not entitled to attorneys fees under the indemnity provision of the PSA.

The Court finds that the attorney fee issue has been inadequately briefed by both sides.  An award of costs is governed by federal law, not state law.  See Versata Software, Inc. v. Internet Brands, Inc., 902 F.Supp.2d 841, 862 (E.D. Tex. 2012) ("Rule 54(d) of the Federal Rules of Civil Procedure provides that an award of costs 'should be allowed to the prevailing party.' Because that determination is a procedural matter governed by the Federal Rules of Civil Procedure, federal law applies, not state law, even if the underlying cause of action arose under state law.")(citations omitted).  The parties will be given an

opportunity to brief the issue prior to entry of Final Judgment.

The Court shall grant the plaintiff's Motion for Summary Judgment to the extent that it seeks damages for breach of contract. The court shall also deny the defendant's Motion in Limine as moot.

No Final Judgment shall issue until the issue of costs has been fully briefed. The plaintiff shall have up to fourteen days to file a motion and brief, and the defendant shall have an equal amount of time to respond. Any rebuttal shall be filed within seven days of the defendant's response.

Accordingly,

IT IS HEREBY ORDERED that the plaintiff's Motion for Summary Judgment **(docket entry 65)** is GRANTED to the extent that it seeks damages for breach of contract;

FURTHER ORDERED that the defendant's Motion in Limine **(docket entry 76)** is DENIED AS MOOT.

SO ORDERED, this the 16th day of June, 2016.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE